UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-12172-GAO

UNITED STATES OF AMERICA,
Plaintiff,

v.

$29,540.00 IN UNITED STATES CURRENCY,
Defendant.

ORDER ON REPORT AND RECOMMENDATION
February 28, 2013

O'TOOLE, D.J.

The United States has moved to strike a claim submitted by Harry Paris Tzivelos. I referred the motion to the magistrate judge for hearing. The magistrate judge has now filed a report recommending that the government's motion be granted. No objection has been filed to the report. After review, I adopt the report and its recommendation. The motion to strike is GRANTED, and the claim is STRICKEN.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA,**
         Plaintiff,
                                                 CIVIL ACTION NO.
    v.                                           11-12172-GAO

$29,540.00 IN UNITED STATES
CURRENCY,
         Defendant.

**REPORT AND RECOMMENDATION RE:
PLAINTIFF'S MOTION TO STRIKE
(DOCKET ENTRY # 8)**

**January 24, 2013**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to strike pursuant to Rule G(8)(c), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), filed by plaintiff United States of America ("plaintiff" or "the United States"). Plaintiff requests that this court strike a claim submitted by Harry Paris Tzivelos ("claimant") because of his lack of statutory standing, and his failure to file an answer to the verified complaint and his failure to respond to plaintiff's special interrogatories. (Docket Entry # 8).

This court conducted two status conferences on October 24 and November 13, 2012. Claimant did not appear at either

conference despite being given written and telephonic notice of the hearings.

## STANDARD OF REVIEW

To establish statutory standing to contest a forfeiture action, a claimant must file a claim that complies with Rules G(5) and G(6) of the Supplemental Rules. United States v. 29 Robinson Boulevard., Medway, Maine, et al., 2012 WL 3947628, at *5 (D.Mass. Sept. 7, 2012) ("statutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)") (citing United States v. Vehicle 2007 Mack 600 Dump Truck, VIN 1M2K189C77M036428, 680 F.Supp.2d 816, 822 (E.D.Mich. 2010)). A court may strike the claim of any claimant who fails to follow the Supplemental Rules' procedural dictates. United States v. All Assets Held at Bank Julius Bears & Co., Ltd., 664 F.Supp.2d 97, 101 (D.D.C. 2009). When deciding a motion to dismiss, the court is obligated to accept all factual accounts contained in the complaint as true and draw reasonable inferences in a plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

## FACTUAL BACKGROUND

On April 29, 2011, Transportation Security Administration ("TSA") officials at Boston Logan International Airport discovered $29,540 in United States currency ("the Currency")

2

in the possession of claimant. (Docket Entry # 1, Ex. A). Investigators from the Drug Enforcement Administration ("DEA") and the Massachusetts State Police ("MSP") met claimant at an airport security checkpoint, where he agreed to speak with them. (Docket Entry # 1, Ex. A). During the conversation at the airport, claimant stated he was traveling from New York to San Francisco to visit friends and that traveling through Boston allowed him to save money on airfare. (Docket Entry # 1, Ex. A). Claimant explained that he purchased the airline ticket the day before he traveled. (Docket Entry # 1, Ex. A).

He further explained that upon his arrival in San Francisco, he planned to travel with friends to Las Vegas to gamble. (Docket Entry # 1, Ex. A). He acknowledged that he did not have a hotel reservation or a rental car reservation in San Francisco or Las Vegas. (Docket Entry # 1, Ex. A). When asked for the names of the friends he was going to visit, claimant provided the name of Michael Kellum ("Kellum"). (Docket Entry # 1, Ex. A). Claimant stated that he did not have an itinerary or a confirmation that indicated travel to Las Vegas or return travel back to New York. (Docket Entry # 1, Ex. A).

During the interview, claimant stated that he withdrew the Currency from his bank account in Pennsylvania and that the Currency consisted of proceeds from a business that he

3

owned. (Docket Entry # 1, Ex. A). After being questioned about his business, claimant eventually told officials that the business had been located in Athens, Greece and was sold many years ago. (Docket Entry # 1, Ex. A). Claimant also stated that he has not filed federal income tax returns for several years. (Docket Entry # 1, Ex. A).

At the airport, investigators also found handwritten notes and a ledger in claimant's possession. (Docket Entry # 1, Ex. A). The ledger listed six names with numbers beside each name that totaled 154,350. (Docket Entry # 1, Ex. A). Claimant explained that the figures represented amounts of money owed by people to whom he lent money and he denied that the listed individuals were drug customers. (Docket Entry # 1, Ex. A). When MSP Detective Lieutenant Thomas Coffey ("Lieutenant Coffey") asked about the name "Art" and the number "32,050," claimant said that he lent Art $32,050 in United States currency. (Docket Entry # 1, Ex. A). Claimant did not know Art's last name and could not articulate why he lent $32,050 to an individual he did not know. (Docket Entry # 1, Ex. A). The detective also asked about the name "George," which had "60,000" written next to it, and "Alex," which had "16,000" written next to it, in the ledger. (Docket Entry # 1, Ex. A). Claimant likewise acknowledged that he did not know George's and Alex's last names and maintained that he

4

lent money to many people on the list he did not know because, "I like to help people." (Docket Entry # 1, Ex. A).

Claimant agreed to continue the interview at the MSP barracks. (Docket Entry # 1, Ex. A). While being transported, he stated that the Currency was part of an inheritance from his father. (Docket Entry # 1, Ex. A). Claimant explained that his father had given him more than 500 gold coins that he then sold for over $500,000. (Docket Entry # 1, Ex. A). Claimant said that he did not file an income tax return when he inherited the gold coins or when he sold them. (Docket Entry # 1, Ex. A). According to claimant, he used the $500,000 to purchase real property in Scranton, Pennsylvania, which he then sold in 2011 for $700,000. (Docket Entry # 1, Ex. A). Claimant identified the Currency as proceeds from that sale. (Docket Entry # 1, Ex. A).

Claimant provided Kellum's telephone number to Lieutenant Coffey, who then telephoned Kellum. (Docket Entry # 1, Ex. A). During the telephone conversation, Lieutenant Coffey asked Kellum if he knew about claimant's planned trip to San Francisco. (Docket Entry #1, Ex. A). At first, Kellum denied knowing claimant. (Docket Entry # 1, Ex. A). Moments later, however, Kellum responded, "Oh, that Harry. I don't know his last name. We aren't that close." (Docket Entry # 1, Ex. A). Kellum then told investigators that he was not meeting

5

claimant in Las Vegas or San Francisco and that he had no plans with him. (Docket Entry #1, Ex. A). At the end of claimants' interview, MSP seized the Currency. (Docket Entry # 1, Ex. A).

On June 7, 2011, pursuant to 18 U.S.C. § 983(a)(1)(A)(i), the DEA sent a Notice of Seizure to claimant notifying him of his right to file a claim to the Currency. (Docket Entry # 9, Ex. A). By letter dated July 8, 2011, sent to the DEA, claimant's attorney, George Vomvolakis ("Attorney Vomvolakis"), demanded the return of the Currency. (Docket Entry # 9, Ex. B).

On September 2, 2011, Officer Randell Shultz ("Officer Shultz"), a member of the Carlsbad, California Police Department, conducted a motor vehicle stop of a gray Lexus bearing California registration 6KWN466 (the "Lexus") and registered to Kellum, which claimant was driving. (Docket Entry # 1, Ex. A). While waiting for a check of claimant's license, Officer Shultz asked claimant if he had anything illegal in the vehicle. (Docket Entry # 1, Ex. A). He replied that he did not and consented to a search of the Lexus. (Docket Entry # 1, Ex. A). During the search, Officer Shultz discovered ten large plastic bags containing a leafy green substance. (Docket Entry # 1, Ex. A). Officer Shultz

then placed claimant under arrest.[1] (Docket Entry # 1, Ex. A). During a search of claimant, Officer Shultz found $4,342 in United States currency. (Docket Entry # 1, Ex. A).

Claimant was transported to the Carlsbad Police Department and charged with possession of marijuana for sale and transportation of marijuana. (Docket Entry # 1, Ex. A). Investigators determined that the marijuana weighed a total of 169.73 ounces (more than ten pounds). (Docket Entry # 1, Ex. A).

## PROCEDURAL BACKGROUND

On December 8, 2011, the United States filed a verified complaint for forfeiture *in Rem* against the Currency pursuant to 18 U.S.C. § 983(a)(3). (Docket Entry # 1). The court found probable cause for a forfeiture of the Currency and issued a warrant and monition on December 9, 2011. (Docket Entry # 2). The United States then provided notice of the complaint and the warrant and monition to claimant and Attorney Vomvolakis via certified mail. (Docket Entry ## 6 & 7). On January 4, 2012, the United States confirmed delivery of the complaint and the warrant and monition to claimant at an address on 8th Avenue in New York City, New York (the "8th Avenue address"). (Docket Entry # 6).

---

[1] A field test later conducted at the Carlsbad Police Department confirmed the substance was marijuana. (Docket Entry # 1, Ex. A).

7

In a letter to the court dated January 11, 2012, claimant stated he was submitting a "formal claim" for the Currency "which was seized from me." (Docket Entry # 4). Claimant also advised the court that he was proceeding pro se.[2] (Docket Entry # 4). Filed on January 23, 2012, the letter bore an address on Wadsworth Avenue in New York City, New York (the "Wadsworth Avenue address"). (Docket Entry # 4).

On February 6, 2012, pursuant to Rule G(6) of the Supplemental Rules, the United States sent claimant, via certified mail to the 8th Avenue Address, its first set of special interrogatories. (Docket Entry # 9, Ex. C). Along with the special interrogatories, the United States sent claimant a letter notifying him that he needed to file a claim that complied with Rule G(5)(a)(i) of the Supplemental Rules and, 20 days after filing such a claim, an answer to the complaint. (Docket Entry # 9, Ex. C). The United States also requested that claimant respond to the special interrogatories and file a proper claim by February 27, 2012. (Docket Entry # 9, Ex. C).

On March 13, 2012, the United States sent claimant the aforementioned interrogatories and a letter requesting that he file both a claim that complied with Rule G(5)(a)(i) of the

---

[2] Attorney Vomvolakis did not file an appearance in this action and claimant is proceeding pro se.

Supplemental Rules and an answer to the complaint, via certified mail to the Wadsworth Avenue address. (Docket Entry # 9, Ex. D). The United States requested that claimant respond to the special interrogatories and file a proper claim by April 3, 2012. (Docket Entry # 9, Ex. D). The United States never received a certified mail receipt. (Docket Entry # 9).

On April 17, 2012, the United States sent the aforementioned interrogatories to claimant for a third time to both the 8th Avenue address and the Wadsworth Avenue address, by first class mail. (Docket Entry # 9, Ex. E). The United States also included with the interrogatories a letter requesting that claimant file a proper claim. (Docket Entry # 9, Ex. E). As of this date, claimant has neither responded to the United States' special interrogatories nor filed a claim in compliance with Rule G(5)(a)(i) of the Supplemental Rules. (Docket Entry # 9). Claimant has also failed to file an answer to the complaint. (Docket Entry # 9).

## DISCUSSION

The United States seeks to strike claimant's purported claim filed on January 23, 2012, (Docket Entry # 4) under Rule G(8)(c) of the Supplemental Rules. (Docket Entry # 8). Plaintiff raises three primary arguments to support the motion to strike. First, plaintiff contends that claimant lacks

standing because the purported claim (Docket Entry # 4) fails to comply with Rule G(5)(a)(i) of the Supplemental Rules. Second, plaintiff asserts that claimant has failed to file an answer to the complaint as required by Rule G(5)(b) of the Supplemental Rules, the warrant and monition issued by the court, and 18 U.S.C. § 983(a)(4)(B). Third, plaintiff argues that because claimant failed to respond to the special interrogatories, as required by Rule G(6)(b) of the Supplemental Rules, the court should strike the purported claim.

I. Lack of Standing

To achieve statutory standing to contest a forfeiture action, a claimant must strictly adhere to the procedural requirements of the Supplemental Rules. 29 Robinson Boulevard, 2012 WL 3947628, at *5. The Supplemental Rules proscribe procedures that "play an important role in structuring forfeiture suits and ensuring that they proceed efficiently." Bank Julius Baer & Co., Ltd., 664 F.Supp.2d at 101; United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir. 1990) (Supplemental Rules govern the procedures for civil forfeitures). Courts may strike the claim of any claimant who fails to follow the Supplemental Rules' procedural dictates. One Dairy Farm, 918 F.2d at 311.

Rule G(5)(a)(i) of the Supplemental Rules governs the alleged claim and provides that:

> A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:
> (A) identify the specific property claimed;
> (B) identify the claimant and state the claimant's interest in the property;
> (C) be signed by the claimant under penalty of perjury; and
> (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

Rule G(5)(a)(i) Supplemental Admiralty and Maritime Claims and Asset Forfeiture Actions. Claimant's purported claim fails to meet two of the four prongs in Rule G(5)(a)(i) of the Supplemental Rules. First, claimant fails to state a cognizable interest in the Currency. Claimant asserts only a possessory interest in the Currency and fails to explain how he came into possession of it. Second, claimant did not sign the purported claim (Docket Entry # 4) under penalty of perjury.

    1.   <u>Failure to State a Cognizable Interest</u>

Claimant asserts a possessory interest in the Currency but fails to explain how the Currency came into his possession. In the alleged claim, he writes, "I respectfully submit this letter as my formal claim to the [Currency] which was seized from me." (Docket Entry # 4). Claimant does not provide any evidence supporting his assertion that he has a

lawful possessory interest in the Currency, which is required for a valid claim. See United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2006) ("party seeking to challenge forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture"); see also United States v. United States Currency, $81,000, 189 F.3d 28, 35 (1st Cir. 1999) ("courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture" but bare assertion of ownership is not). Claimant does not provide anything more than a bare possessory interest in the purported claim to the Currency thereby failing to adhere to the procedural requirements of the Supplemental Rules.

2.  **Failure to Sign Formal Claim Under Penalty of Perjury**

Filing a claim that is signed under penalty of perjury is not just a procedural technicality. United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004) (filing verified claim is "no mere technicality"). Signing under penalty of perjury "forces claimants to assert their alleged ownership under oath, creating a deterrent against filing

false claims." Id. at 163; see also United States v. $125,934.62, 370 F.3d 1325, 1328 (11th Cir. 2004) (a verified claim is essential to establishing statutory standing and is necessary to deter the filing of false claims); accord United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664-65 (3rd Cir. 2007) (verification requirement minimizes danger of false claims). Claimant did not sign the purported claim under penalty of perjury and thus failed to follow the procedural dictates of Rule G(5)(a)(i)(C) of the Supplemental Rules. Therefore, claimant fails to establish statutory standing because of his noncompliance with the Supplemental Rules.

II. Failure to Answer the Complaint

Rule G(5)(b) of the Supplemental Rules requires claimants to file answers within 21 days after filing claims. Likewise, 18 U.S.C. § 983(a)(4)(B) requires that a "person asserting an interest in seized property . . . shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." The Court's warrant and monition also stated that, "All answers to the complaint must be filed with the United States District Court for the District of Massachusetts . . . within twenty (20) days after the filing of the claim." The United States sent claimant copies of the complaint multiple times. (Docket

Entry ## 1-2 & 9, Ex. C, D & E). Claimant filed the purported claim on January 23, 2012, in response to the complaint and warrant and monition. It is therefore apparent that claimant received the complaint as well as the notice to file an answer to the complaint.

In violation of Rule G(5)(b) of the Supplemental Rules, the warrant and monition and 18 U.S.C. § 983(a)(4)(B), claimant did not file an answer to the complaint. Accordingly, he fails to establish statutory standing by failing to adhere to the procedural requirements of the Supplemental Rules.

III. Failure to Respond to Special Interrogatories

The United States served special interrogatories on claimant, pursuant to Rule G(6)(a) of the Supplemental Rules, three separate times (February 6, March 13, and April 17, 2012) and also provided him with extended deadlines for his responses. (Docket Entry # 9 Ex. C, D & E). Rule G(6)(b) of the Supplemental Rules requires that all answers or objections to special interrogatories be served within 21 days after the interrogatories were served. A judge has broad discretion to manage scheduling, discovery and sanctions and may extend the time period in which interrogatories must be answered. Williams v. Monarch Machine Tool Company, Inc., 26 F.3d 228, 230 (1st Cir. 1994). Claimant did not respond to the special

14

interrogatories by the deadlines and did not ask for an extension of time. Claimant therefore fails to establish statutory standing by failing to adhere to the procedural requirements of the Supplemental Rules.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[3] that the motion to strike the purported claim (Docket Entry # 8) be **ALLOWED**.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

15